**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

THEODORE VINCENT HORN II, )
)
          Petitioner, )
)
v. )
)   Case No. 16-3156-CM
STATE OF KANSAS, et al., )
)
          Respondents. )
)

**MEMORANDUM AND ORDER**

Theodore Vincent Horn II, a prisoner housed by the Kansas Department of Corrections, filed a pro se petition for writ of habeas corpus (Doc. 1). Petitioner was convicted in state court of first degree murder and seeks a writ pursuant to 28 U.S.C. § 2254. He seeks federal relief, arguing that his constitutional rights were violated by over thirty acts. Before filing the instant petition in federal court, petitioner filed five habeas petitions in state court. The court has now fully reviewed the record and petitioner's arguments and is ready to rule. For the following reasons, the court finds that habeas relief is not warranted. Horn's § 2254 petition is denied.

### I.    Procedural History

- <u>November 4, 2002.</u> A Sedgwick County, Kansas jury convicted petitioner of one count of first degree premeditated murder.

- <u>December 12, 2002.</u> The state court sentenced petitioner to a term of life imprisonment with no possibility of parole for 50 years (Hard 50). Petitioner appealed.

- <u>June 18, 2004.</u> The Kansas Supreme Court affirmed petitioner's conviction and sentence.

- <u>May 9, 2005.</u> Petitioner filed a motion for post-conviction relief pursuant to Kan. Stat. Ann. § 60-1507 in state court (his **first** motion). This motion (and all subsequent § 1507 motions) was filed in the Sedgwick County District Court.

- <u>January 10, 2006.</u> The district court denied petitioner's § 1507 motion. Petitioner appealed.

- <u>July 3, 2007.</u> Petitioner filed a **second** § 1507 motion.

- <u>July 6, 2007.</u> The Kansas Court of Appeals affirmed the denial of petitioner's first § 1507 motion.

- <u>November 7, 2007.</u> The Kansas Supreme Court denied review.

- <u>December 10, 2007.</u> The district court denied petitioner's second § 1507 motion as untimely and successive. Petitioner appealed.

- <u>April 20, 2009.</u> Petitioner filed a **third** § 1507 motion.

- <u>April 29, 2009.</u> The district court denied petitioner's third § 1507 motion as successive. Petitioner did not appeal.

- <u>October 9, 2009.</u> The appellate court affirmed the denial of petitioner's second § 1507 motion.

- <u>November 6, 2009.</u> Petitioner filed a **fourth** § 1507 motion.

- <u>June 23, 2010.</u> The Kansas Supreme Court denied review of petitioner's second § 1507 motion.

- <u>September 21, 2010.</u> The district court denied petitioner's fourth § 1507 motion as untimely and successive. Petitioner appealed.

- <u>August 17, 2012.</u> The appellate court affirmed the denial of petitioner's fourth § 1507 motion.

- <u>April 8, 2013.</u> The Kansas Supreme Court denied review of petitioner's fourth § 1507 motion.

- <u>April 12, 2013.</u> Petitioner filed a **fifth** § 1507 motion.

- <u>August 8, 2013.</u> Petitioner filed for federal habeas corpus relief pursuant to 28 U.S.C. § 2254 (a case preceding the instant case).

- August 23, 2013. The district court denied petitioner's fifth § 1507 motion as successive and an abuse of the remedy. Petitioner appealed.

- December 24, 2014. The Kansas Court of Appeals affirmed the district court's denial of petitioner's fifth § 1507 motion.

- April 6, 2015. Petitioner filed a motion to correct illegal sentence in state court.

- July 31, 2015. The Sedgwick County District Court denied petitioner's motion to correct illegal sentence. Petitioner appealed.

- August 20, 2015. The Kansas Supreme Court denied review of petitioner's fifth § 1507 motion.

- June 27, 2016. The Kansas Supreme Court summarily affirmed petitioner's sentence.

- June 28, 2016. The United States District Court dismissed petitioner's first federal habeas petition without prejudice for petitioner to exhaust his claims.

- July 18, 2016. Petitioner filed the instant petition for federal habeas corpus relief pursuant to 28 U.S.C. § 2254.

## II. Standard of Review

Because petitioner filed his habeas petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996, the court reviews petitioner's claims pursuant to the provisions of the Act. *Wallace v. Ward*, 191 F.3d 1235, 1240 (10th Cir. 1999). The Act permits a court to grant a writ only if one of two circumstances is present: (1) the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or (2) the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id*. § 2254(d)(2). Absent clear and convincing evidence to the contrary, the court presumes that state court factual findings are correct. *Id*. § 2254(e)(1).

Under the first circumstance, the court will find that a state court decision is contrary to clearly established law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Under the second circumstance, the court will find that a state court decision is an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. The key inquiry is whether the state court's application of the law was objectively unreasonable. *Id*. at 409; *see also Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003) (observing that the "objectively unreasonable" standard of review is more deferential than the "clear error" standard). But the petitioner need not show that "all reasonable jurists" would disagree with the decision of the state court. *Williams*, 529 U.S. at 409–10.

This court's review is limited; "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). A federal court does not review a state court decision for errors of state law. *Id*. (citations omitted).

### III.    **Factual Background**

For convenience and consistency, the court recounts the following facts, taken directly from the Kansas Supreme Court's decision on petitioner's direct appeal.

> Theodore V. Horn, II, had been an alcoholic for years. When his girlfriend kicked him out of her residence because he had resumed his drinking, he moved in with his grandmother, Tina Weaver, in May 2002. Weaver had raised Horn, and he called her "Mom." She disapproved of his drinking and had called the police when he had previously been drinking or had been drunk at her house. She had once obtained a protection from abuse order against him, though it had expired in June 2000.
> On Friday, May 17, 2002—within a week or two of Horn's moving in with Weaver—Krystal Kern, who lived across the street, left for work around noon. She saw Weaver standing inside Weaver's house staring out through the screen door. Kern waved, but Weaver did not acknowledge her, which was unusual because Weaver

would always wave, tell her good morning, and wish her a nice day. Kern then heard a man's loud, angry voice coming from inside the house, but did not see Weaver react in any way. Kern never saw her again.

Another neighbor, Greg Fisher, last saw Weaver on May 17 between 5 and 5:30 p.m. when she stuck her head outside her door. The next morning, May 18, he stopped at Weaver's to drop off a bag of fruit and vegetables. He rang the bell, but received no answer, so he left the bag on the doorknob. That afternoon at 2:15 he received a call from his daughter advising him that another neighbor, Betty Roux, was requesting his assistance in checking on Weaver's welfare. When he later approached Weaver's door, he noticed the bag of fruit and vegetables still hanging outside. He received no response to the buzzer, and when he attempted to open the door, a safety chain only allowed it to open several inches. He detected a commotion in the dark living room and Horn called out to say they had overslept but everything was ok. As Fisher walked away, Roux advised that she had already called 911 to come and check on Weaver.

Officer Gregory Johnson of the Wichita police was dispatched that day to 422 North Custer for a check-welfare call. He had been told that he was going to check the welfare of an 89–year–old female whom the neighbors said they had not seen in a couple of days. Officer Michelle Woodrow arrived at the same time, i.e., approximately 3 p.m. Emergency medical services personnel and ambulances also arrived.

The officers spoke to Roux and Roux's daughter. Roux told them that she had not seen Weaver for a couple of days and that she was concerned because she was used to Weaver being at her front door collecting mail. Roux was concerned because the mail was still in Weaver's mail slot, which was unusual. According to Roux, Weaver knew exactly when the mail was supposed to arrive, and if it was a few minutes late, she would call her neighbors. Roux told Officer Johnson that she had knocked on Weaver's door but Horn refused to open it. Horn told Roux that Weaver was okay, but Roux thought his response was unusual so she called 911.

After the conversation with Roux and her daughter in Roux's front yard, Officer Johnson and Officer Woodrow walked next door to 422 North Custer. Johnson confirmed the mail was still in the slot next to the door. He opened the screen door and knocked on the inner door. Johnson heard a male voice from inside ask who it was, and Johnson identified himself as a police officer. For 4–5 minutes, Johnson continued knocking and calling for Horn by name. Officer Woodrow checked to see if the door was locked and pushed the door open. The door opened 3 to 4 inches, but a security chain prevented it from opening further. Through the opening they were able to see what appeared to be the shape of a body nearby under a blanket.

When Horn eventually came to the door, he told the officers he and Weaver were asleep and he was naked. Johnson observed Horn was naked and directed him to get dressed because of the presence of a female officer. He also told Horn to open the door so they could check on his mother. At that point Horn stated, "She's dead. I killed her." He was again directed to put on pants and open the door, to which he stated several times, "This is murder. I killed my mom. I love my mom." After he put on his pants and unchained the door, he was placed in handcuffs. Three additional times he repeated, "This is murder. I killed my mom. I love my mom." Horn was later taken to a hospital in an ambulance because he had passed out in the patrol car.

At the hospital, Lieutenant Kenneth Landwehr observed a blood smear on Horn's right forearm and removed the blood smear with a set of swabs. He observed Horn's hands and detected no sign of injury. Landwehr also took a swab of Horn's penis before medical personnel cleaned it.

Mark Alexander was on duty as a detention deputy at the Sedgwick County jail at 7 p.m. when Horn was brought in. According to Alexander, Horn was screaming, saying that Weaver had been "bitching" at him and he got mad and twisted her neck and took a saw and started cutting her head off. Horn told the officers that she had been dead since Thursday, May 16.

Police found Weaver's body in the living room covered with a green blanket. They observed a massive trauma to her head and a massive amount of pooling of blood underneath it. A wooden carpenter's level, broken and blood-spotted, was nearby. They also observed she was partially decapitated and a carpenter's handsaw was underneath her body. The saw contained hair and blood, consistent with a pattern of blood drops near Weaver's head. In front of the couch and 3 feet from Weaver's feet was a pornographic magazine entitled "Live Young Girls" folded in half lengthwise. The magazine contained Horn's semen and one of his fingerprints.

The forensic pathologist who investigated the cause of Weaver's death testified that based on the receding of rigor mortis in the body, she had probably been dead since 10:15 p.m. on Friday, May 17. He concluded she had died from multiple blunt and sharp force injuries. The neck injuries were consistent with the handsaw and reflected five separate starting points, with one major cut entirely through the vertebrae and ending at the trachea. The pathologist concluded that the major cut alone took between 30 minutes and 2 hours to inflict and that Weaver was still alive when the sawing occurred.

Weaver's body was partially clad, with her upper garments pushed over a shoulder and her slacks pulled down to the midpoint on her buttocks. Her genital area also contained small lacerations and abrasions, but no seminal fluid was found on swabs taken from her or her clothing. Horn's DNA was not found on Weaver's fingernails, her clothing, or the bloodstains on the tools used to kill her. Weaver's DNA was not found on Horn's jeans, his penile swab, or his forearm swab.

At trial, Horn testified that on Friday, May 17, he had called his employer around 5 a.m. to see if he would be working that day. The employer had no work for him, so he began to drink. He remembered waking up after passing out on the couch and Weaver griping at him. He got up and ate something in the kitchen. Horn remembered the program Wheel of Fortune was on the television, which typically begins at 6:30 p.m. He returned to the couch and passed out again. It was dark when he woke up again and he learned he had urinated on himself. He got up, but did not remember what he did before he fell asleep again.

Horn testified that he first saw Weaver's body when he retrieved the newspaper. He started crying, got drunk again, and put a spread over her. He had no recollection of killing her.

*State v. Horn*, 91 P.3d 517, 520–22 (Kan. 2009).

A federal habeas court presumes that the state courts' factual findings are correct, absent clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Saiz v. Ortiz*, 392 F.3d 1166, 1175 (10th Cir. 2004).

**IV.    Discussion**

**A.  Fourth Amendment Claim**

Petitioner first argues that the police violated his Fourth Amendment right against unreasonable search and seizure when they opened the door to the house and looked inside. He further argues that the state courts unreasonably applied the Fourth Amendment in denying his motion to suppress. But *Stone v. Powell*, 428 U.S. 465, 494 (1976), precludes federal habeas relief for a Fourth Amendment violation. 428 U.S. at 494 ("[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.").

Petitioner had an opportunity for full and fair litigation of this issue before both the trial court and appellate court. The trial court held a hearing on petitioner's motion to suppress. Petitioner then raised the suppression claim on direct appeal. The Kansas Supreme Court also reviewed the claim. *Horn*, 91 P.3d at 522–27. The court determines that the state court system gave petitioner a full and fair opportunity to litigate his Fourth Amendment claims. Under *Stone*, no federal habeas corpus relief is warranted.

**B.  Evidence of Pornographic Magazine**

In petitioner's second claim, he claims that he was denied due process and a fair trial because the trial court admitted evidence that a pornographic magazine was found at the crime scene. But this claim raises only an alleged error of state law—not a constitutional violation.

State court evidentiary decisions are matters of state law. Upon federal habeas review, the court does not redress errors of state law or "reexamine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 67–68. "As a general matter, federal habeas corpus relief does not lie to review state law questions about the admissibility of evidence, and federal habeas courts may not interfere with state evidentiary rulings unless the rulings in question rendered 'the trial so fundamentally unfair as to constitute a denial of federal constitutional rights.'" *Moore v. Marr*, 254 F.3d 1235, 1246 (10th Cir. 2001) (citations omitted).

Petitioner argues that the pornographic magazine was irrelevant and unfairly prejudicial. When he presented these arguments to the state court, he relied on state law—not constitutional due process. The Kansas Supreme Court addressed the claim as one of state law. *Horn*, 91 P.3d at 527–28. Petitioner therefore never raised this claim as a constitutional claim before now.

Even if the court were to find that petitioner had properly preserved this claim as a due process claim, he still is not entitled to relief. The Kansas Supreme Court found that the evidence was relevant to "supporting the State's theory of sexual assault as a motive for the murder," and therefore was properly admitted. *Id.* at 527. And petitioner failed "to meet his burden of demonstrating that the court's admission of the pornographic magazine, after weighing the probative value against the prejudicial effect, was an abuse of discretion." *Id*. at 528. These rulings did not render petitioner's trial "so fundamentally unfair as to constitute a denial of federal constitutional rights." *See Moore*, 254 F.3d at 1246. The state court's decision was not contrary to, and did not involve an unreasonable application of, established United States Supreme Court precedent. Petitioner complains only of a state law evidentiary decision, and no federal habeas relief is warranted.

### C. Lesser Included Offense Instruction

Petitioner next claims that he is entitled to relief because the trial court should have instructed the jury that it could have found petitioner guilty of a lesser included offense. But there is no constitutional right to lesser included offense instructions in non-capital cases, and lesser included offense arguments are not reviewable in federal habeas cases. *Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004) (citations omitted). This alleged error does not merit relief.

### D. Hard 50 Sentence

As noted above, petitioner received a "Hard 50" life sentence, which means that he has a mandatory term of fifty years before he could be eligible for parole. He argues that this sentence is unconstitutional and is contrary to the holding of *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).

On direct appeal, petitioner made this same argument. The Kansas Supreme Court rejected petitioner's argument, relying on previous case law holding that *Apprendi* only applied to the maximum sentence imposed—not the minimum sentence. *Horn*, 91 P.3d at 530–31 (citations omitted). This was consistent with existing United States Supreme Court precedent. *See Harris v. United States*, 536 U.S. 545, 565–68 (2002), *overruled by Alleyne v. United States*, 133 S. Ct. 2151, 2158–63 (2013) (holding that *Apprendi's* rule does not extend to mandatory minimum sentences). When the Kansas Supreme Court rendered its decision (2009), it was neither contrary to, nor involved an unreasonable application of, clearly established United States Supreme Court precedent. *See*, *e.g., Englehardt v. Heimgartner*, 579 F. App'x 671, 679 (10th Cir. 2014); *Van Houten v. Werholtz*, No. 04-3316-MLB, 2005 WL 1076530 at *5–6 (D. Kan. May 5, 2005). In 2013, *Alleyne* overruled *Harris* and held that increasing a minimum sentence based on judicial factfinding does violate the constitution and the holding of *Apprendi*. 133 S. Ct. at 2158–63. But *Alleyne* does not offer petitioner habeas relief.

The court will only grant federal habeas relief for violations of clearly established United States Supreme Court precedent. 28 U.S.C. § 2254(d)(1). "Clearly established" means that a precedent must

be in place at the time of the state court decision. *Greene v. Fisher*, 565 U.S. 34, 39 (2011); *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011). *Alleyne* was not clearly established in 2009 when the Kansas Supreme Court issued its decision. The decision, therefore, was not contrary to clearly established United States Supreme Court precedent at the time it was rendered. Rather, it was consistent with *Harris*, which was governing law at the time.

The only way petitioner would be entitled to habeas relief on this claim is if *Alleyne* is retroactive. It is not. *In re Payne*, 733 F.3d 1027, 1029–30 (10th Cir. 2013); *Appleby v. Cline*, No. 15-3038-JTM, 2016 WL 7440821, *7–8 (D. Kan. 2016). *Alleyne* provides no basis for federal habeas relief.

### E. Ineffective Assistance Claims

Petitioner's next series of claims alleges that he received ineffective assistance of counsel in several ways. The court applies the standard identified in *Strickland v. Washington*, 466 U.S. 668 (1984), when determining whether a habeas petitioner's counsel provided ineffective assistance. *See Romano v. Gibson*, 278 F.3d 1145, 1151 (10th Cir. 2002) (applying *Strickland*). Under *Strickland*, a petitioner bears the burden of satisfying a two-pronged test. First, he must show that his attorney's "performance was deficient" and "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88. The court affords considerable deference to an attorney's strategic decisions and "recognize[s] that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. Second, a habeas petitioner must demonstrate prejudice, which requires a showing that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. "[T]here is no reason for a court deciding an ineffective assistance claim to . . .

-10-

address both components of the inquiry if the [petitioner] makes an insufficient showing on one. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id*. at 697. Again, in the context of a § 2254 petition, this court may grant habeas relief "only if the state court determination on the issue involved an 'unreasonable application' of clearly established federal law as established by the Supreme Court." *Spreitzer v. Peters*, 114 F.3d 1435, 1453 (7th Cir. 1997); *see also Trice v. Ward*, 196 F.3d 1151, 1160 (10th Cir. 1999). Additionally, a state court's decision on ineffectiveness claims is entitled to "doubly deferential" review. *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (citing *Cullen*, 563 U.S. at 189–90).

### (1) Failure to Consult and Call An Additional Expert

Petitioner first claims that his counsel's failure to consult and call an additional expert was ineffective assistance. In reviewing this claim, the Kansas Court of Appeals articulated and applied the correct legal standard. *Horn v. State*, No. 96,306, 2007 WL 1964958, at *2 (Kan. Ct. App. July 6, 2007). Petitioner therefore must show that it was "necessarily unreasonable" for the appellate court to conclude (1) "that he had not overcome the strong presumption of competence," and (2) "that he had failed to undermine confidence" in the jury's verdict. *Cullen*, 563 U.S. at 190.

The Kansas Court of Appeals observed that petitioner's trial counsel used an expert during trial "who specializes in drugs and alcohol and their effects upon humans." *Horn*, 2007 WL 1964958 at *2. Petitioner's defense was voluntary intoxication—that petitioner's intoxication made him lack the mental capacity to commit premeditated murder. The expert was an experienced forensic toxicologist, who was an appropriate expert witness to aid in the defense. But petitioner claims that counsel should have also used an expert in psychology or psychiatry.

Generally, decisions about which witnesses to call and what evidence to present are strategic decisions; ones that are left to counsel's discretion. *Hoxsie v. Kerby*, 108 F.3d 1239, 1246 (10th Cir.

-11-

1997). Expert testimony falls within this category. *Turner v. Calderon*, 281 F.3d 851, 876 (9th Cir. 2002) ("The choice of what type of expert to use is one of trial strategy and deserves 'a heavy measure of deference.'"). Claims of ineffective assistance based on calling one expert over another consistently fail. *See*, *e.g., id.*; *Tibbetts v. Bradshaw*, 633 F.3d 436, 443 (6th Cir. 2011); *West v. Ryan*, 608 F.3d 477, 489–90 (9th Cir. 2010); *Williams v. Allen*, 598 F.3d 778, 794 (11th Cir. 2010). The appellate court's rejection of petitioner's claim was a reasonable application of *Strickland.* A habeas petitioner is not entitled "to the testimony of every qualified expert who might possess some specialized knowledge regarding the petitioner's case." *Tibbetts*, 633 F.3d at 443. Petitioner is not entitled to relief on this claim.

### (2) Failure to Oppose Removal of Juror

Petitioner next claims his counsel was ineffective for failing to oppose removal of a juror. The Kansas Court of Appeals found this claim meritless. *Horn*, 2007 WL 1964958 at *2–3. During petitioner's trial, a juror was overheard making a prejudicial comment to a sheriff's deputy, and that juror was removed from the panel. Defense counsel agreed with the decision, but also requested a mistrial, claiming that the questioning of the remaining jurors about the incident tainted the jury. Defense counsel's actions were reasonable, as was the appellate court's review of his actions. Petitioner is not entitled to relief on this basis.

To the extent that petitioner also challenges the denial of a mistrial, the Kansas Court of Appeals found the claim procedurally defaulted under state law. *Horn*, 2007 WL 1964958, at *3. Any such claim is also procedurally defaulted under § 2254. *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991).

### (3) Failure to Convey Plea Offer

Next, petitioner claims that his counsel failed to convey a plea offer to him. The Kansas Court of Appeals found this claim conclusory and without sufficient explanation or evidentiary support. *Horn*, 2007 WL 1964958, at *6. This was reasonable. "Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief." *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994); *see also United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (noting conclusory allegations are insufficient to support a claim).

Petitioner has not (1) provided any details of the alleged plea offer; (2) specifically alleged what he believes his counsel did or did not do; or (3) claimed that he would have accepted the alleged plea offer but for his counsel's ineffective assistance. The state appellate court properly characterized petitioner's claim as conclusory, and petitioner is not entitled to relief on this claim.

### (4) Failure to Subpoena Additional Witnesses

Again, petitioner claims that counsel should have called additional witnesses—this time, two liquor store clerks who could have testified to the amount of alcohol that petitioner purchased. The Kansas Court of Appeals rejected this argument, stating, "Decisions on whether to call a certain witness are strategic and tactical and generally within the exclusive province of the attorney." *Horn*, 2007 WL 1964958, at *5 (citation omitted); *see also Hoxsie*, 108 F.3d at 1246. The court noted that the evidence would have been cumulative and likely irrelevant. *Horn*, 2007 WL 1964958, at *5. And the clerks would not have been able to testify as to petitioner's intoxication at the relevant time. *Id*. Knowing how much alcohol petitioner bought does not equate to knowing how much he consumed and when he did so. Any testimony the clerks could have provided would have been inconclusive at best. Petitioner's counsel's decision not to call these witnesses was reasonable, and petitioner was not prejudiced. *See Wackerly v. Workman*, 580 F.3d 1171, 1182 (10th Cir. 2009) (finding no ineffective

-13-

assistance when evidence would have been cumulative or inconclusive). The appellate court's treatment of this claim was a reasonable application of *Strickland*.

(5) Failure to Investigate the Crime Scene

Petitioner next claims that counsel failed to adequately examine the crime scene. Specifically, petitioner alleges that counsel should have measured between the victim's body and furniture, examined the elastic band of the victim's underwear and pants, examined where the telephone cord was ripped from the wall, and found more than ten additional vodka bottles in the garage. But petitioner failed to raise the first three allegations of this claim before the state courts, and they are therefore unexhausted and procedurally defaulted. *See Carver v. Straub*, 349 F.3d 340, 346–47 (6th Cir. 2003) ("[T]o the extent that an ineffective assistance of counsel claim is based upon a different allegedly ineffective action than the claim presented to the state courts, the claim has not been fairly presented to the state courts."). Petitioner raised a claim similar to the fourth allegation in his first § 1507 appeal, *see Horn*, 2007 WL 1964958, at *4, faulting counsel for failing to discover multiple empty vodka bottles at the scene.

Federal courts ordinarily will not review unexhausted habeas claims. *See Picard v. Connor*, 404 U.S. 270, 275 (1971). But "[a] habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him." *Coleman*, 501 U.S. at 732. When there are no longer state remedies available, there is a federal habeas procedural default—even though the state courts did not deny relief based on a state procedural bar. *Id*. at 735 n.1; *see also Teague v. Lane*, 489 U.S. 288, 297–99 (1989).

Because petitioner could have raised the first three allegations in his first § 1507 motion, he defaulted the claims under state procedural rules. *Walker v. State*, 530 P.2d 1235, 1238 (Kan. 1975) ("When a petitioner, in [a § 1507 motion], sets out a ground or grounds for relief, he is presumed to

-14-

have listed all the grounds upon which he is relying, and a second motion in which additional grounds for relief are alleged may be properly denied."); *see also* Kan. Stat. Ann. § 60-1507(c) (barring "second or successive [collateral] motion[s] for similar relief"). The claims are likewise defaulted under § 2254.

Petitioner can only overcome this procedural bar if he can either (1) show cause for his default and actual prejudice, or (2) demonstrate that a fundamental miscarriage of justice will arise out of this court's failure to consider the claim. *Coleman*, 501 U.S. at 750. Here, petitioner has not shown cause or prejudice. He has not shown an external factor that would have prevented him from raising these allegations in his initial § 1507 motion. *See Coleman*, 501 U.S. at 753 ("'[C]ause' under the cause and prejudice test must be something external to the petitioner").

Petitioner also cannot show it would be a miscarriage of justice to deny review on the merits. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). To show a miscarriage of justice, a petitioner must establish that the alleged error probably resulted in the conviction of an innocent person. *Bousley v. United States*, 523 U.S. 614, 623 (1998). But petitioner does not claim that he is actually innocent. He admitted to killing the victim; his defense centered instead on the degree of his culpability—he claimed that his intoxication prevented him from having the intent necessary for first degree murder. Petitioner has not shown that he is entitled to an exception to the procedural default rule.

### (6) <u>Failure to Introduce Booking/Arrest Video</u>

Petitioner's next claim is that counsel should have introduced at trial the video of petitioner talking to police shortly after his arrest. According to petitioner, the video would have shown how drunk he was, and would have supported his claim that he was provoked by the victim. Provocation, in turn, would have justified a lesser included offense instruction.

-15-

The Kansas Court of Appeals found that counsel's decision to not use the video was a strategic decision within counsel's discretion. *Horn*, 2007 WL 1964958, at *5. Further, the court held that the video would not have justified a lesser included offense instruction under state law.

The appellate court reasonably applied *Strickland*, as "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." 466 U.S. at 690–91. And decisions as to which witnesses to call and what evidence to present are strategic decisions left to counsel's discretion. *Hoxsie*, 108 F.3d at 1246. It was not unreasonable for the Kansas Court of Appeals to conclude that petitioner failed to meet his burden of demonstrating ineffective assistance.

### (7) Failure to Properly Cross-Examine Cindy Washington

Petitioner next alleges that counsel failed to properly cross-examine witness Cindy Washington. He argues that counsel could have had the witness testify as to petitioner's mental state, as well as his bizarre behavior when intoxicated. The Kansas Court of Appeals rejected this claim, determining that defense counsel did, in fact, question the witness about petitioner's state of mind and behavior while intoxicated. *Horn*, 2007 WL 1964958, at *4. This finding is supported by the record.

Cross-examination is virtually unchallengeable in habeas proceedings. *See Strickland*, 466 U.S. at 690–91; *Kessler v. Cline*, 335 F. App'x 768, 770 (10th Cir. 2009). "[W]hether to engage in cross-examination, and if so to what extent and in what manner," is a strategic decision within the province of counsel's discretion. *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987); *see also Matthews v. Workman*, 577 F.3d 1175, 1190–91 (10th Cir. 2009) (recognizing that the decision whether to cross-examine was a matter of strategy). The state court's rejection of this claim was a reasonable application of *Strickland*, and federal habeas relief is not warranted.

### (8) Failure to Object to Prosecutorial Misconduct

Petitioner's final ineffective assistance claim is that defense counsel was ineffective for failing to object to prosecutorial misconduct. But petitioner did not raise this claim before the state appellate courts. Petitioner marked in his § 2254 motion that he did raise this issue in his first § 1507 motion, but the court has not located the argument in the record. It is not addressed in the state court orders, either. As with the crime scene claim above, this claim is also unexhausted and procedurally defaulted. For the same reasons set forth above, petitioner cannot show the cause and prejudice, or miscarriage of justice, to excuse his procedural default. This claim is also barred from federal habeas review.

### F. Denial of Due Process

Petitioner filed an untimely, second motion for post-conviction relief under § 1507, claiming that he had newly-discovered evidence—petitioner's "recovered memories." The district court found the motion barred by the statute of limitations and as a second or successive motion. The appellate court affirmed. *Horn v. State*, No. 100,397, 2009 WL 3270856, at *2 (Kan. Ct. App. Oct. 9, 2009). The Kansas Court of Appeals further held that petitioner's recovered memories did not constitute newly discovered evidence sufficient to overcome the state procedural bars. *Id.* at *2–3 ("We must reject Horn's assertion that his ever-recovering memory should entitle him to an ever-evolving series of postconviction motions and hearings. If we were to accept each additional recovered memory as newly discovered evidence, one can only imagine how many motions and evidentiary hearings might be warranted.").

As matters of state law, these grounds for rejecting petitioner's claim are insulated from federal habeas review. *Estelle*, 502 U.S. at 67–68. The state procedural bars act as independent and adequate state grounds to bar federal review. *Coleman*, 501 U.S. at 729–30. Federal habeas relief is not warranted on this claim.

-17-

### G. Remaining Claims

Petitioner's remaining claims are procedurally defaulted. First: Claims 14 through 17 and 19 through 24. In reviewing petitioner's fourth § 1507 petition, the Kansas Court of Appeals found these claims procedurally defaulted under state rules. *Horn v. State*, No. 105,662, 2012 WL 3629867, at *3–4 (Kan. Ct. App. Aug. 17, 2012). They are therefore defaulted here, as well. *Coleman*, 501 U.S. at 732.

Second: Petitioner's Claim 18. This claim (that prosecutorial misconduct justified the filing of a second or successive state habeas motion) raises a claim of state law error that is not reviewable on federal habeas review. *Estelle*, 502 U.S. at 67–68 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state law questions.").

Third: Claims 25 through 30. These were presented in petitioner's fifth § 1507 petition, and the Kansas Court of Appeals ultimately rejected them. *Horn v. State*, No. 111,069, 2014 WL 7653863, at *2–5 (Kan. Ct. App. Dec. 24, 2014). Again, they are also procedurally defaulted here. In any event, they all involve claims of ineffective assistance of state collateral appeal counsel, which cannot form the basis for federal habeas relief. 28 U.S.C. § 2254(i). Claim 31 (which was not raised before now) fails for the same reason.

Finally: Claim 32. The Kanas Supreme Court found this claim procedurally barred because it relied on retroactive application of a change in state law that occurred long after petitioner's conviction was final. *State v. Horn*, No. 114,759 (Kan. June 27, 2016). Even if this claim were not defaulted, it is grounded in state law, and therefore is not reviewable here.

All of these claims are procedurally defaulted. As previously discussed, petitioner cannot establish cause and prejudice, or miscarriage of justice. These claims are therefore barred from federal habeas review.

## V. Conclusion

Petitioner has failed to identify constitutional errors that justify § 2254 relief. None of the state court decisions were contrary to, or involved an unreasonable application of, clearly established United States Supreme Court precedent. Neither were they based on an unreasonable determination of the facts in light of the evidence presented. The court therefore denies petitioner's § 2254 motion.

In light of this decision, the court must decide whether to issue a certificate of appealability. Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." The court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To meet this standard, a petitioner may show that the issues presented are debatable among jurists, that a court could resolve the issues differently, or that the issues deserve further consideration. *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)).

Petitioner has not made a substantial showing of the denial of a constitutional right, and the court therefore declines to enter a certificate of appealability.

**IT IS THEREFORE ORDERED** that petitioner's request for a writ of habeas corpus pursuant to § 2254 (Doc. 1) is denied. A certificate of appealability is denied.

Dated this 7th day of December, 2018, at Kansas City, Kansas.

**s/ Carlos Murguia**
**CARLOS MURGUIA**
**United States District Judge**